Good morning. Good morning. May it please the court. My name is Evan Borges and I represent the taxpayer in this appeal, Thomas Rubin. It's important that I address what's very present in all the government's briefs before the district court and in this court of appeal, which is an attempt to cast a dark cloud over Mr. Rubin. I know it sometimes is, you know, maybe corny or trite to say, but I think in the context of this appeal it is not trite to say that Mr. Rubin is entitled to equal protection of the law. The tax laws apply to all taxpayers, as the court knows, regardless of background, popularity, unpopularity, or even prior convictions. And this court's decision, of course, will apply to all taxpayers. Let me ask you this. Okay, so in terms of it, my understanding is it's it's not disputed. He did not file an 8082, right, form. That's correct. For the three years that matter, for 1998 to 2000, that's correct. And it's your understanding that the government, at this point, is the government taking the position it's not a hard-and-fast rule that you have to file an 8082, or are they still contending that you must file an 8082 in order to lay out consistent inconsistencies? Well, that's a good question. I read their brief on appeal as saying that it's not a hard-and-fast rule. However, Your Honor, I think what's critical to point out is that before the district court, and I encourage the court to review the government's motion for judgment on the pleadings before the district court, because their entire brief before the district court, with an exception, was focused on a legally erroneous premise, which was that somehow the power of a bankruptcy trustee to file a return for a subchapter S corporation eviscerates and nullifies the separate right of a subchapter S shareholder to file an inconsistent return. They've abandoned that position on appeal. Unfortunately, it was the thrust of their motion below. So what? Well, I'm about to say, Your Honor, as to the notice issue, what's revealing is that all the government argued below was not whether they received actual notice. They government argued only that Mr. Rubin's claims are barred by virtue of failure to file Form 8082. They did take a hard-and-fast rule on Form 8082 before the district court. And the district court teed up that issue and then said, it doesn't matter here, I'm not going to rule on it. And the argument is put to us, and the government can speak for itself, seems to me to be teed up in a slightly different way, which is that we may have been able to figure out what was going on with regard to this taxpayer, but the requirement is intended to keep us from having to figure out for ourselves, rather imposing on the taxpayer the requirement to identify explicitly what the differences are. And your client did not identify explicitly what the differences are, albeit submitted information that didn't make it a big leap to figure out what the differences are. Do I understand that correctly? Your Honor, I think your Honor is generally correct, but there is one piece that's missing from the record on appeal, and I appeared in this case only three weeks ago. I did not participate in the briefing or putting together the record, but I was taught by a guy who, representing professional accounting firms in malpractice cases, he said on the read is the footnotes. So in one footnote of the government's brief, there's a reference to something that is not in the appellate record that is before the district court docket, and it's a one-page document. It's document 1-1 before the district court docket, and at page 79 of 104 of that document, what it is, is it's the explanatory cover letter from Mr. Rubin's IRS enclosing the three amended returns. I mentioned this, your Honor. Let me make sure I know. This is something that was before the district court. Correct. So it is officially in the record. We can deal with it even though it's not in the appellate record. You're correct, your Honor. I mean, you'd have to take notice of it. It's not in the appellate record. Well, whatever was before the district court is technically before us, so it's here. I just want to make sure I know where to find it. So could you repeat exactly where it is we would find this? Yes, it's document 1-1 filed April 14, 2016, at page 79 of 104. And your Honor, on the notice side of the equation, this is a very important document, and I actually, and this is why I would emphasize to ask the court to go back and read the government's brief before the district court, because what the government does in its brief before the district court is it lays out an extraordinary understanding of what the tax issues are. And you can't get there just by citing to the paragraphs of the complaint. You, one has to get there by looking at the exhibits to the complaint. The government... I don't think there's any question but that the government understands that. But they do fairly say, look, we've, we're diving into this case, there's this lawsuit file, there are lawyers involved now. Of course you'd expect us to look real hard, but we're processing millions and millions of tax returns. It can't be a game of making us guess where somebody's doing something different without saying it. So that's the fact that the government may have actual knowledge is important, but it only goes so far. And the question becomes, did your client, I mean what the statute seems to require is a quote, a statement identifying the inconsistency. Yes. And the inconsistency actually is not meant to refer to the difference between your client's original return and amended return, which is the schedule your client did file, but the inconsistency between the corporate return and your client's treatment. And... That's correct. May I address that? Was there ever something filed by your client that did identify that inconsistency? Yes. And if I, it would be the pro forma return for the Subchapter S Corporation. And if I could explain, Your Honor. Okay. Well I know the corporate return, it identifies what your client says should have been the corporate return, but it doesn't list what the corporate return actually was. So is that enough to identify the inconsistency? I would submit, of course, and I think the government is dancing on the head of a pin because what this, the tax issues here, while complicated, are really not that complicated. There are two fundamental issues, and these are called Subchapter S items. They end up on the corporate return and then are transferred to the individual's return, the shareholder's return. There's two Subchapter S items at issue here. One is what they call a bad debt write-off for accounts receivable of 23 million dollars, which if recognized in the year 2000 has an impact that the IRS and accountants all know. Secondly, there's the significant issue of what they call cancellation of debt income, and whether the company essentially in 2000 was insolvent or broke and couldn't pay its debts of 66 million dollars, which are then recognized as cancellation of debt income by accountants. And there was a change in the law, and the 8-1 Supreme Court decision in Gitlitz states that for cancellation of in debt income during the period that Gitlitz applies, it increases the taxpayer's basis. These are gateway threshold issues that once the IRS understands them, and they did, and they do not deny actual notice. I think that's imperative. Once an accountant or the IRS understands these issues, and once one looks at the cover letter submitted by Mr. Rubin's accountant, which guides the IRS and says what one has to do here is look at the year 2000, which is the the the keystone year. 2000 is the year where losses result based on application of these doctrines on bad debt write-off and COD income, and then the losses carry back to prior years, which is mathematical. The year 2000 is the year that Mr. Rubin's accountant, for illustration purposes and to help the IRS and frankly do its work for it, showed what a hypothetical subchapter S return for the corporation would look like, so that the IRS could see that what Mr. Rubin was claiming was correct. The assumption of the IRS is that somehow somewhere in their files they didn't have the original subchapter S return. What's the most important document in this appeal, if I, there's one thing I can get through an oral argument, is the IRS adjudication of this claim, which is set forth at AR 345-346. This is a letter from the IRS to Mr. Rubin in his initial refund request, and in this letter the IRS demonstrates knowledge of every single one of the issues that were raised as to subject matter, treatment, and dollar amount. And incidentally, Your Honor, the the issue is treatment under the statute of the subchapter S item, which does not necessarily correlate with dollar amount. If I could make one, a few more points, I don't know if my time is extended for questions, because of the questions. There is one more point I would like to clarify. Of course. And that is that the other issue raised with regard to tax year 2001, I don't see anything in the papers that have been filed by your client prior to this time that suggests there's really a dispute. It's off the table. If I could make the court's job easier, I could give a lengthy, extra two-minute, on top of the two-minute explanation of why that's relevant, but under the circumstances, it's off the table. It's zero, and I think the court is correct. It's moved. Okay. I'll give you a two-minute summary of that all. So let's hear their position. Thank you. Good morning. Good morning, your honor. May it please the court, Jeff Klimas for the United States. Section 6037C of the Internal Revenue Code requires shareholders in an S corporation to do one of two things. Either conform their treatment of corporate items to the filed corporate return, or file with the inconsistencies in treatment. Jumping right to the heart of the matter. So is the purpose of this, just so that I understand this, since I don't really ever want your job, but that, but is, so if people don't do this, then, from your standpoint, then they don't have any chance to get the refund, even though they might otherwise be entitled to it. Is that correct? That's correct, your honor. All right. And is the point that by doing this, that this is a flag for people doing taxes to make sure that people don't sneak something by? That's correct, your honor. To make sure that the IRS is apprised of the specific items for which there's an inconsistency or potential inconsistency between the shareholder return and the corporation return. And this isn't an insignificant amount of ten million dollars, right? That's correct. And somehow you realize that all of this was out here, so something put you on notice of that to tell him you didn't lay it, you know, we're not going to let you go forward because you didn't let lay out the inconsistencies with enough specificity, right? That's correct, your honor. The IRS ultimately puzzled out what was going on. Is this, this is a person, you know, sometimes we have tax cases where people are involved in elaborate schemes to defraud the government or they go to seminars and they say they don't have to pay any cases. Here, from what I can ascertain, this person paid all the taxes that he was required to pay and then, when there were different circumstances, came back and said, well now I'm entitled to a refund. Is that correct? That's correct, your honor. All right. So it's not a, you're not looking at this as some sort of fraudulent type of situation. There is, obviously for the purpose of a motion for judgment on the pleadings, we assume the facts as alleged in the complaint. There, there is the issue of the fact that Mr. Rubin was involved in embezzling money from the S Corporation and is now saying that because that company ultimately was not able to pay its debts in a timely manner and ultimately may have had creditors write off those debts because of his criminal conduct, that that justifies accelerating certain tax items. There might be a certain inequity. Is that conduct before us with the current question? Excuse me, that's what you might get to down the road if the case is brought back to life, but the issue now simply has to do with whether the taxpayer did enough to flag the difference. That's correct, your honor. What did the taxpayer fail to do to flag the difference? What we think that the taxpayer needed to do is provide on an item-by-item basis what the corporation did and what he did that is inconsistent with the corporation. So if he were filing an 8082, the IRS has made it very easy for taxpayers to say the corporation was reporting income of ten dollars, I'm reporting income of zero dollars. Well, there's no statute or regulation requiring the use of a particular form, is there? That's correct, your honor, and we're not taking the position that the 8082 is the only way for Mr. Rubin to satisfy that requirement. It would have been an easy way for him to do that in this situation. He was clearly aware of the form because he used it in the subsequent tax year. We're not suggesting that that's the only way to do so here. So if he had attached to what he did submit, the pro forma, if he had attached a copy of what had actually been filed on behalf of the corporation, would that have sufficed? I think that that probably would have, or he could have done a strikethrough on the pro forma that he submitted, saying this is what the corporation originally reported, here's what I'm saying the corporation should have reported. But that's not what he actually did. He said very clearly the differences between his original return and his amended returns, but he never said this is a position taken by the corporation, this is a position that I'm taking that's inconsistent with that corporate position. Well, I'm not sure that's really the case. I mean, if you look at his 2000 attachment, he explains the pro forma he attaches. It says the pro forma blah blah blah blah blah blah blah for the calendar year 2000, after having explained that the bankruptcy trustee had not prepared an amendment. So I look at this, I mean, it's, it's, I don't find it at all difficult to infer that hence this is different from what was previously filed. The IRS obviously knows what was previously filed because it was filed with the IRS. So how does that not say, look, these are, this is different. I mean, I understand that it doesn't put side-by-side the numbers, but I have difficulty understanding how this doesn't identify the fact that there are inconsistencies, even if it doesn't actually identify what the inconsistencies are. We would submit, Your Honor, that Section 6037C does require the taxpayer to say what the inconsistencies are. That it releases the tax, the shareholder from his duty to conform his return to the corporate return only for those items for which the taxpayer, for which the shareholder, identifies the inconsistency in treatment. We think that the way to identify the inconsistencies in treatment is to say the corporation did one thing, I'm doing another, and to say what those two things are. It's not identifying the inconsistency to say the corporation took positions that I didn't, that I disagree with. The corporation took positions with respect to discharge of indebtedness that I didn't. What Mr. Rubin needed to do was say the corporation reported income of $10, I'm reporting income of zero. We don't think that he did that. We think that finding that Mr. Rubin complied with 6037C would require an assumption, an assumption that what he did when he filed his original returns was to comport those returns literally and in every specific to the filed focus media return. And we believe that every dollar change, every dollar of amendment that he made to a focus item also worked a dollar-for-dollar adjustment and a dollar-for-dollar inconsistency. So it makes your job easier. It certainly would make the IRS's job easier and remember Was there anything about this, did it sneak by you? You didn't actually, you didn't pay ten million dollars in a refund out to him, right? The IRS did not know, Your Honor. Okay, so how did it come to your attention? I believe what likely happened, it's not part of the record on the 12C motion, but I believe that the IRS did have to actually retrieve the focus file return from its files and do a line-by-line comparison between the pro forma return that Mr. Rubin submitted. Whatever he did identified that to you, right? So you didn't just pay out ten million dollars. That's correct, Your Honor. And the pro forma is like what, three pages long. It's not like we're dealing with some thick stack of paper. I believe the the pro forma is in the record of pages 236 to 258, so it is a little bit longer than three pages. And we would submit that not only is the IRS potentially dealing with multiple stakeholders, whether they're multiple potential shareholders or multiple potential partners in a partnership, but it's also dealing potentially with multiple tax years. For example, net operating losses, which is one of the items for which Mr. Rubin is seeking the refund, net operating losses can be carried back two tax years or can be carried forward up to 20 tax years. And due to the multiplicity of potential stakeholders taking inconsistent treatment, and those inconsistent treatments spreading potentially across numerous tax years, results in a situation where consistent reporting or clear identification of the inconsistent treatment is essential to tax administration. In dealing with the analogous, the parallel provision for partners and partnerships in 6222, the Federal Circuit in Bassing stated that the purpose, the manifest purpose behind these statutory duties of consistencies is not merely to avoid actual inconsistencies between stakeholders, but the potential risk for such inconsistencies. And that risk is increased when a taxpayer, when a shareholder or a partner does not set forth in detail, this is what the corporation did, this is what I am doing differently. Now, does the IRS have any obligation to inform a taxpayer of an inadequacy in an application for a tax refund and to give the taxpayer an In the case of purely procedural requirements, this court in King and Martinez said that the IRS can, by failing to raise administrative exhaustion as a defense at the administrative refund stage, can waive the availability of those defenses in a subsequent refund suit. In King, the issue was the sequencing between which a taxpayer made the payment. So you can't answer yes or no to my question? It depends on what kind of a requirement it is. We would submit that this is a similar to the common law duty of consistency that this court addressed in the state of Ashman and Janus versus Commissioner. And because it's a substantive position that goes to the merits of the taxpayer's claim, it is properly asserted in a de novo refund suit, regardless of whether the IRS relied on that basis for rejecting the claim at the administrative level. That's what the Supreme Court said in Lewis v. Reynolds. That's what this court has said in FedMart and other cases. So are you now, is the government's position, though, now that the, that, what is the government's position whether the form 8082, it must be used to notify IRS of inconsistencies? It is not our position that that form is required. But it was your position previously. That's, that's a reasonable reading of our briefing below, yes. So what changed that? In, in the proceedings below, the government said that Mr. Rubin had to comply with 6037C. And the way to do that was by filing a form 8082. I, I think it's reasonable to say that we were saying that was the only way. I don't think that that's a defensible reading of the statute. There's no regulation. There's no revenue procedure that we can point to that says this is the only way. What we're doing is comparing what Mr. Rubin did against 6037. That's the test. I just don't have a basis to come in here and say that the particular form had to be used. Any additional questions? All right. Thank you. We've taken a minute over, so thank you for your argument. All right. We'll give you two minutes. Sometimes in, in the law, we get focused on lots of issues and we just forget what actually happened. Okay. And this is a taxpayer who things actually happened to. What actually occurred here is that the IRS adjudicated Mr. Rubin's claim in substantial detail on the merits based on his identification of inconsistent treatment. It's inconsistent treatment that's required under the statute. That's in the narrative at AR193 that his accountant provided that Judge Clifton was reading from. It's, it's in the package of documents he submitted. I would submit that it was an overabundance of, of information that Mr. Rubin submitted, regardless actual notice to the IRS was provided. The IRS adjudicated it under this court's Martinez decision, which is based on Justice Frankfurter's decision in Angeles Milling. If the IRS unmistakably adjudicates a claim at the administrative level, it waives the defense of irregularity in the notice at the inception of the process. So what are they doing now? Now they're creating a fiction. They're creating a fiction that, that they're ignoring that they knew everything below. They understood it completely. They adjudicated it. They're saying, oh wait, there was an irregularity at the beginning. Well, it didn't matter to the IRS on the administrative level. They waived it under this court's Martinez decision and the Supreme Court's Angeles Milling decision. Last thing, they now say, oh, well, it's an affirmative defense. In other words, the notice of inconsistency issue is an affirmative defense. Look at their answer. I would, I, I beg the court to look at their answer. The second affirmative defense that they refer to doesn't even cite 6037. It doesn't even mention the notice of inconsistency. What that affirmative defense refers to is what I would submit is a, is a legally erroneous statement that a bankruptcy trustee's exclusive right to file for the corporation eviscerates and, and makes the shareholder separate right to file and consistently disappear. That's what their second affirmative defense is. If they didn't waive it at the administrative level by adjudicating it, which is required by Martinez and Frankfurter's opinion and Angeles Milling, they've waived it by failure to raise an affirmative defense. And Mr. Rubin should be entitled to leave to amend, if anything, to go through this IRS letter. It was attached as an exhibit to his opposition below. The IRS's response before the trial court was, oh, that's not in the record. Well, that's an erroneous statement of the standard on a motion for judgment on the pleadings. This was a proffer by Mr. Rubin and his opposition of how he could amend to say, wait a minute, let's look at what actually happened here. And what actually happened here is the IRS got it. They got actual notice. They adjudicated it in extensive detail. And so all the parade of horribles of what if, what if it's this case, they're the fiction, the fiction of some defective notice at the beginning that didn't matter to anybody until, I don't know, until we got to the district court and the, and the government is trying to deprive Mr. Rubin of what he's entitled to based on, on a fiction that the IRS didn't get it. And they did get it. And I, I would submit he's, he's entitled to a hearing on the merits before the district court, like any other taxpayer. I would just keep focused on this taxpayer. Yes. I could go on all day. No, thank you. Well, I'm not going to let that happen, but I think we, I think we got both of your arguments here. Thank you. This matter will stand submitted.
judges: Clifton, Callahan, Hoyt